**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| New Beginnings Care, LLC | ) | Case No. 16-10272 NWW |
| Abbeville Healthcare & Rehab, LLC | ) | Case No. 16-10273 SDR |
| Campus Healthcare & Rehab, LLC | ) | Case No. 16-10275 NWW |
| Cedarcreek Healthcare & Rehab, LLC | ) | Case No. 16-10276 SDR |
| Eastman Healthcare & Rehab, LLC | ) | Case No. 16-10277 SDR |
| Edwards Redeemer Healthcare & Rehab, LLC | ) | Case No. 16-10278 NWW |
| Goodwill Healthcare & Rehab, LLC | ) | Case No. 16-10279 NWW |
| Jeffersonville Healthcare & Rehab, LLC | ) | Case No. 16-10280 NWW |
| Mt Pleasant Healthcare & Rehab, LLC | ) | Case No. 16-10282 SDR |
| Oceanside Healthcare & Rehab, LLC | ) | Case No. 16-10283 SDR |
| Pinewood Healthcare & Rehab, LLC | ) | Case No. 16-10284 SDR |
| Rockmart Healthcare & Rehab, LLC | ) | Case No. 16-10285 SDR |
| Savannah Beach Healthcare & Rehab, LLC | ) | Case No. 16-10286 SDR |
| Woodlands Healthcare & Rehab, LLC | ) | Case No. 16-10287 SDR |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | Jointly Administered Requested |

---

**INTERIM ORDER GRANTING MOTION FOR AUTHORITY
TO USE CASH COLLATERAL, GRANTING ADEQUATE PROTECTION
TO THE PRE-PETITION LENDER, AND SCHEDULING A FINAL HEARING
PURSUANT TO BANKRUPTCY RULE 4001**

---

THIS CAUSE came before the Court at a preliminary hearing on January 26, 2016 at 10:00 a.m. ("Preliminary Hearing"), to consider the Motion for Authority To Use Cash Collateral And Request For Emergency Hearing, Granting Adequate Protection to the Pre-Petition Lender, and Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 ("Motion") filed on January 24, 2016, Debtors and Debtors-in-Possession (collectively, "Debtors") in these Chapter 11 cases (the "Cases"), pursuant to Sections 105, 361, 362, 363 and 507(b) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 6004 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"),** seeking the entry of an order granting, *inter alia,* the following relief; the Court hereby finds:

a. Authorization under Section 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004 for the Debtors to use as cash collateral (as defined in Section 363(a) of the Bankruptcy Code) the proceeds and any revenues from the Pre-Petition Collateral (as defined below) (the **"Cash Collateral")** that the Debtors are holding or may obtain for general working capital purposes and general corporate purposes relating to the post-petition operations in accordance with the terms of the Debtors' proposed budget (the **"Budget"),** a copy of which is annexed hereto as Exhibit "A";

b. Authorization for the Debtors to perform such other acts as may be necessary pursuant to the provisions of this Interim Order and any final order granting the foregoing relief and such other relief as provided herein and in such final order (the **"Final Order");** and together with the Interim Order, (the "Cash Collateral Orders");

c. Authorization for the Debtors to continue to use the Cash Collateral of Gemino Healthcare Finance ("Gemino") in accordance with the provisions of this Interim Order;

d. Authorization for the Debtors to use the proceeds of Gemino's collateral in accordance with the Budget;

e. Authorization for the Debtors to provide adequate protection to Gemino pursuant to the terms of this Interim Order based upon the use of its Cash Collateral;

2

f. To vacate and modify the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of this Interim Order; and

g. To waive any applicable stay as provided in the Bankruptcy Rules and provide for the immediate effectiveness of this Interim Order.

The Debtors having requested in the Motion that pending a final hearing on the Motion (the "Final Hearing"); and the granting of adequate protection to Gemino on an interim basis; and upon finding that notice of the Preliminary Hearing was given, where possible, to: (a) Gemino; (b) United States Trustee; (c) the Debtors' material pre-petition and post-petition secured lenders or any agent therefore; (d) the holders of the 30 largest unsecured claims on a consolidated basis; (e) all parties known by the Debtors claiming to have liens on or security interests in any of the Debtors' property; and (f) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 (collectively, "Notice Parties"), in accordance with Bankruptcy Rules 2002, and 4001(b), (c) and (d); and upon finding that this Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334; and upon finding that venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Preliminary Hearing to consider the Motion on an interim basis having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief is fair and reasonable and in the best interest of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and good and sufficient cause appearing therefore;

A. *Petition Date.* On January 22, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the ("Court"), thereby commencing these Cases.

B. *Debtors-In-Possession.* Each of the Debtors is continuing in the management and operation of their businesses and properties as Debtors-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed in these Cases. New

3

Beginnings Care, LLC; Abbeville Healthcare & Rehab, LLC; Campus Healthcare & Rehab, LLC; Cedarcreek Healthcare & Rehab, LLC; Eastman Healthcare & Rehab, LLC; Edwards Redeemer Healthcare & Rehab, LLC; Goodwill Healthcare & Rehab, LLC; Jeffersonville Healthcare & Rehab, LLC; Mt Pleasant Healthcare & Rehab; Oceanside Healthcare & Rehab, LLC; Pinewood Healthcare & Rehab, LLC; Rockmart Healthcare & Rehab, LLC; Savannah Beach Healthcare & Rehab, LLC; and Woodlands Healthcare & Rehab, LLC (collectively, the "Debtors"). The nursing homes are a vital part of the communities in which they operate, employing in excess of 1900 individuals and providing an important resource by serving the nursing home needs of the residents of the communities. The 13 nursing homes have over 800 residents under their care.

(i). *Personal Property*. The Debtors have receivables and or payment rights from Medicare, Medicaid, and other payors for the healthcare and nursing home services provided (collectively, "Current Receivables"). The outstanding balance of Current Receivables on the Debtors' books exceeds $9,570,000. In addition, the Debtors own other valuable personal property assets, including, without limitation, cash on hand, furniture, fixtures, equipment, inventory, intellectual property and various causes of action.

C. *Committee*. No official committee of unsecured creditors ("Committee") has been appointed in these cases at this time.

D. *Jurisdiction*. This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

E. *Notice*. Notice of the Motion, the relief requested in the Motion, and the Preliminary Hearing was served by the Debtors on the Notice Parties. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested in the Motion, and the Preliminary Hearing: (i) was, in the Debtors' good faith belief, the best available under the circumstances; (ii) constitutes due and sufficient notice thereof; and (iii) complies

4

with Bankruptcy Rules 4001(b) and 4001(c). No further notice of the relief sought at the Preliminary Hearing is necessary or required.

F. *Pre-Petition Secured Debt.* Subject to the provisions of this Interim Order, the Debtors acknowledge and stipulate that the following Pre-Petition secured obligations (as set forth more fully in the Motion) are asserted by Gemino against the Debtors:

    i. *Pre-Petition Secured Debt:*

    a. Prior to the Petition Date, Debtors and Gemino entered into, or caused the entry, of those certain "Financing Documents". To secure their obligations to Gemino under the Financing Documents, Debtors have granted Gemino a first priority lien on and security interest in and to all of their rights, title and interests in and to the following property ("Pre-Petition Collateral"): (i) all of Debtors' deposit accounts and all other tangible and intangible property, including the Receivables, and the cash proceeds of the foregoing.

    b. As of the Petition Date, Gemino asserts that the amounts due and owing under the Financing Documents exceed $2,735,000 ("Claim"), including principal, interest, and other charges allowed under the Financing Documents.

    c. Pre-Petition, Gemino advanced funds to the Debtors on a daily basis based upon the Debtors' borrowing base for that day. Debtors anticipate continuing this procedure post-petition, but with additional funds being advanced due to the increased borrowing base caused by the stay of the state taxing authorities recouping funds due to the Debtors from the states' Medicare/Medicaid agency.

G. *Findings Regarding the Use of the Cash Collateral.*

    i. *Good Cause.* Good cause has been shown for the entry of this Interim Order.

    ii. *Immediate Need.* The Debtors require the immediate interim use of Cash Collateral to operate their business and maximize their prospects for a successful reorganization. The

access of the Debtors to sufficient working capital and liquidity through the use of the Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors. Absent the interim use of the Cash Collateral, the Debtors will not have sufficient sources of working capital to continue as a community based providers of essential nursing home services and maintain the value of their assets. The ability of the Debtors to pay their medical staff and other employees, provide critical resident care, maintain business relationships with vendors and suppliers, purchase new inventory, and otherwise finance their operations is essential to the Debtors' continued viability. Unless the Debtors are authorized to use Cash Collateral on an interim basis as provided in this Interim Order pending a final hearing on the Motion, the Debtors and their estates will suffer immediate and irreparable harm.

iii. *Fair and Reasonable Terms.* The terms of the use of the Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

iv. *Irreparable Harm.* The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rules 4001 (b)(2) and 4001 ( c )(2). Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed. The Debtors assert that it is in the best interest of each of their respective bankruptcy estates and their creditors that the Debtors be permitted to use Cash Collateral in the manner provided for herein.

H. *Findings Regarding the Need for Adequate Protection.*

i. The Debtors have requested the use of Gemino's Cash Collateral. Upon information and belief, Gemino does not consent to the use of its Cash Collateral except upon the terms and conditions of this Interim Order.

ii. The Debtors wish to provide adequate protection of the liens and security interests of Gemino as set forth in this Interim Order. In consideration for the Debtors use of Cash Collateral, Gemino shall be entitled to receive adequate protection as set forth in this Interim Order, pursuant to Sections 361, 363 and 364 of the Bankruptcy Code for any diminution in the value of its

interest in the Pre-Petition Collateral resulting from, among other things, the Debtors' use, sale or lease of such Pre-Petition Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "Diminution in Value").

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED,** as follows:

1. **Objections Overruled.** All objections to the entry of this Interim Order are hereby overruled to the extent they have not otherwise been resolved or withdrawn.

2. **Authorization to Use of Cash Collateral.**

(a) Subject to the terms and conditions contained herein, the Debtors are authorized to use Cash Collateral through the earlier of (i) January 22, 2016; and (ii) the entry of a final order authorizing the use of Cash Collateral (the "Usage Period"); provided, however, that such use of Cash Collateral shall only be authorized for the actual and necessary expenses of operating the Debtors' businesses during the Usage Period as set forth in the Budget, which Budget shall only be amended or modified with prior written consent of Gemino.

(b) Unless otherwise authorized by the Court, the amount of Cash Collateral which the Debtors may use during the Usage Period shall not exceed in aggregate 125% of each line item, and 120% of total expenditures, set forth in the Budget; provided, however, that in addition to items set forth in the Budget, the Debtors shall be permitted to pay the actual expenses incurred for utility deposits, Court-approved fees and expenses of any patient care ombudsman appointed under 11 U.S.C. §333, and fees of the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 (the "U.S. Trustee Fees"). In the event the Usage Period terminates in the middle of a week, the amount budgeted for that week shall be prorated accordingly.

(c) Notwithstanding anything in this Interim Order to the contrary, Cash Collateral shall not include: (i) any cash, securities or funds on deposit with or held by Gemino that are not operating

7

revenues; or (ii) proceeds of any lease, sublease license or sale outside the ordinary course of business of any of the Debtors' assets (together, the "Extraordinary Proceeds"). Nothing in this Interim Order or any subsequent order concerning the extension of Debtor-in-Possession financing to the Debtors or the use of Cash Collateral by the Debtors shall entitle the Debtors to use any portion of the Pre-Petition Collateral, except as expressly authorized herein, and no lien or other interest may be granted in the Gemino Collateral to any third party including, but not limited to any Debtor-in-Possession lender without Gemino's prior written consent.

3. **Adequate Protection.**

(a) Adequate Protection Provided to Gemino. Gemino is entitled to receive adequate protection on account of its interests in the Pre-Petition Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code.

i. *Replacement Lien.* In consideration for the use of the Cash Collateral by the Debtors on and after the Petition Date, Gemino is hereby granted a valid, perfected and enforceable continuing replacement lien and security interest (the "Replacement Lien"), equivalent to a lien granted under Section 364(c) of the Bankruptcy Code, in and upon all assets of the Debtors existing on or after the Petition Date of the same nature and type as the collateral securing the Gemino's Claim, including, without limitation, all of the Debtors' accounts receivable, contract rights, general intangibles, and such other collateral in which Gemino had an interest prior to the initiation of these Cases, whether such property was owned on the Petition Date or thereafter created, acquired or arising, and improvements, additions and extensions thereto, all replacements thereof, all books and records with respect thereto and all products and proceeds of the foregoing, specifically including any proceeds of the foregoing deposited in bank accounts opened pre-petition by the Debtors, the accounts opened by the Debtor after the Petition Date and the accounts themselves, subject and junior only to the U.S. Trustee Fees, to the same extent, validity, perfection, enforceability and priority of the liens and security interests of Gemino in such collateral as of the Petition Date. Notwithstanding anything to the contrary herein, the Replacement Lien shall not extend to the proceeds of any

avoidance actions received by the Debtor or the estate pursuant to Sections 544, 547, 548, 549 or 550 of the Bankruptcy Code ("Avoidance Actions").

      ii. *Financial Information.* As additional adequate protection of Gemino's security interests in the Cash Collateral, the Debtors shall allow Gemino reasonable access during normal business hours to the premises, officers, employees, auditors, appraisers and financial advisors of the Debtors in order to conduct reviews, appraisals, analyses and/or audits of the Pre-Petition Collateral, the Post-Petition Collateral, and the Debtors' books and records, and shall otherwise reasonably cooperate in providing any other financial information requested by Gemino. The Debtors shall furnish such other reports and information as may be reasonably requested from time to time by Gemino, all such reports to be certified by the Debtors' chief financial officer or chief executive officer. From and after the entry of this Interim Order, the Debtors shall provide to Gemino on Wednesday of each week (commencing with the second week after the Petition Date), a weekly report certified by the Debtors' chief executive officer (or designee) and in the same form as the Budget indicating all receipts received and disbursements made by the Debtors in the week ending the prior Friday compared to the Budget and detailing any variances of more than 5% and at least $10,000 from the expenditures and receipts in the Budget. Gemino shall have independent access to the Debtors' financial advisor and investment banker to discuss matters relating to the Cases.

      iii. *Reduction or Invalidation of Post-Petition Collateral.* In the event any of Gemino's security interests in or liens upon the Debtors' assets is reduced or invalidated by order of this Court, then its security interests in and liens upon the Post-Petition Collateral granted by this Interim Order shall be reduced or invalidated commensurately.

4. **Deposits of Cash Collateral**. All Cash Collateral shall be deposited in Debtors' Debtor-in-Possession account(s) to be established in accordance with the U. S. Trustee guidelines, except as otherwise approved by the U.S. Trustee or order of the Court.

5. **Accounting**. The Debtors shall at all times (a) sequester, segregate, and account for all Cash Collateral that comes into their possession, custody or control, (b) keep and provide

9

upon request records reasonably sufficient for Gemino to determine the status of Cash Collateral collections and expenditures, and (c) shall provide to Gemino copies of the monthly operating reports filed with this Court and with the Office of the United States Trustee.

6. **Deemed Request for Stay Relief**. This Interim Order shall be deemed to constitute a request by Gemino for relief from the automatic stay with respect to the Pre-Petition Collateral and for adequate protection for the use of the Cash Collateral as of the Petition Date.

7. **Modification of Automatic Stay**. The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens; (b) permit the Debtors to perform such other acts as are necessary to effectuate the terms of this Interim Order; and (c) the exercise of remedies by Gemino to the extent permitted by this Interim Order.

8. **Insurance**. Debtors shall insure their property, including the Pre-Petition and Post-Petition Collateral against all risks to which it is exposed, including loss, damage, fire, theft and all other such risks, in an amount not less than the fair market value of such collateral, with such companies, under such policies and in such form as is appropriate for a business of a type similar to the Debtors using sound business judgment.

9. **Failure of Adequate Protection**. The terms and conditions of this Interim Order are intended to provide Gemino with adequate protection for its interest in property of the Debtors. Nothing herein shall be construed as an admission by Gemino that its interest in property of the Debtors, including Cash Collateral, is adequately protected.

10. **Rights Preserved**. Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Debtors, any Committee appointed by this Court and Gemino are preserved.

11. **Binding Effect of Interim Order**. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this

Interim Order shall become valid and binding upon and inure to the benefit of the Debtors and Gemino, all other creditors of any of the Debtors or any Committee appointed by this Court in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

12. **No Competing Liens**. Except as set forth in this Interim Order, the Debtors shall not grant liens on, or security interests in the Pre-Petition Collateral or the Post-Petition Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise, that are senior to or pari passu with Gemino without its prior written.

13. **Restriction on Borrowing or Sale**.  Unless otherwise authorized by order of the Court following notice to Gemino and such other parties as may be required by the Bankruptcy Code or the Court, Debtors shall not obtain any post-petition financing or sell or lease any of their assets, except in the ordinary course of business.

14. **Enforceability**.  The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to the Cases.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable nunc pro tunc to the Petition Date immediately upon execution hereof.  To the extent necessary, findings of fact shall be deemed conclusions of law, and conclusions of law shall be deemed findings of fact.

15. **Final Hearing; Notice of Final Hearing**.  Upon execution of this Interim Order and pursuant to Bankruptcy Rule 4001(d), the Debtors shall serve a copy of this Interim Order by first-class mail on all creditors on the Notice Parties and all other interested parties requesting notice.  All interested parties are hereby given notice by service of this Interim Order of the effective date of this Interim Order.  Any objection to this Interim Order must be filed with the

Court and served on or before _____, upon counsel for (a) the Debtors. The Final Hearing on the Motion and any timely filed objections to this Interim Order will be held before the Court on the _____day of _____, at _____.m., in Courtroom __, United States Courthouse.

16. **Notices**. All notices, requests, demands, waivers and other communications required or permitted to be given under this Interim Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) mailed by first-class, registered or certified mail, return receipt requested, postage prepaid, or (c) sent by next-day or overnight mail or delivery or (d) sent by facsimile.

1. If to the Debtors to:

   New Beginnings Care, LLC, et. al.
   c/o Debbie Jones
   4704 Hixson Pike
   Hixson, TN 37343
   djones@dbcare.net

   with a copy to:

   David J. Fulton, Esq.
   701 Market Street, Suite 1000
   Chattanooga, TN 37402
   djf@sfglegal.com

17. **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

# # #

Prepared and approved:

SCARBOROUGH & FULTON

By:    /s/David J. Fulton
David J. Fulton, #006102
701 Market Street, Suite 1000
Chattanooga, Tennessee  37402
(423) 648-1880
(423) 648-1881 (facsimile)
DJF@sfglegal.com